Warden, oral argument not to exceed 15 minutes per side, Mr. David Andrew Morin, supervisory attorney to be argued by Ms. Meredith Collier, law student. Good morning, and may it please the court, I am David Morin, the director of the Michigan Innocence Clinic at the University of Michigan Law School. And it is my distinct pleasure to introduce Meredith Collier, a student in the clinic who this court has granted permission to present the argument on behalf of Mr. Ceasor. Thank you. Good morning, Ms. Collier, and welcome. Thank you. I'm happy to have you here today to argue. Thank you very much. May it please the court, I'm here on behalf of petitioner appellant Terry Ceasor, who has joined us in the courtroom today, along with my supervising attorney, Mr. David Morin. With your permission, I'd like to reserve three minutes for rebuttal. Thank you. Your honors, Mr. Ceasor's request today is simple, that this court remand for an evidentiary hearing so that after a decade, Mr. Ceasor is finally able to develop a record on the Strickland claim that his appellate counsel botched in 2007. And this court has the authority to remand for an evidentiary hearing under EDPA 2254E2, because Mr. Ceasor's ineffective assistance of appellate counsel claim was never adjudicated on the merits in state court. Second, Mr. Ceasor plainly makes a sufficient showing of ineffective assistance of appellate counsel, because his appellate counsel failed to present Mr. Ceasor's Strickland claim in a form suitable for appellate consideration on the merits. Let me ask you, if these matters were not adjudicated, you just said were not adjudicated in state court, does that mean that we're not under EDPA deference here, but we're looking at this based on a De Novo review, standard of review? What's your position on that? Yes, your honor, that's correct. We are under De Novo review. The case, I believe, that we've cited in the brief is Fleming v. Metrish and McKenzie v. Smith. Actually, it's McKenzie v. Smith when the state court fails to adjudicate a petitioner's claim on the merits. This court should review De Novo. And so finally, Judge O'Meara erred when he denied Mr. Ceasor the evidentiary hearing, because Mr. Ceasor alleged sufficient grounds for release, demonstrated that there are relevant facts in dispute surrounding the shaken baby diagnosis, and the state courts never adjudicated his appellate counsel claims on the merits. And so because we are under 2254E2 in the EDPA statute, Mr. Ceasor's claim should be remanded for the evidentiary hearing. No state court ever reached the merits, because as the attorney general conceded and Judge O'Meara found, the state courts erroneously applied procedural default to his ineffective assistance of appellate counsel claims. Mr. Ceasor brought the ineffective assistance of appellate counsel claim at the earliest possible time, which was on his motion for post-conviction relief. But at that time, the state courts, as the attorney general conceded, applied the procedural default erroneously. Underlying Mr. Ceasor's ineffective assistance of appellate counsel claim is the ineffective assistance of trial counsel claim that appellate counsel botched. And so what appellate counsel did was recognize that Mr. Ceasor had a valid Strickland claim on appeal, but he failed to make the proper motion for a Ginther or evidentiary hearing in the Michigan Court of Appeals under the Michigan court rule. And so there was never anything put on the record about finding an expert in 2005 to testify at Mr. Ceasor's trial, nor was there anything put on the record about what an expert would have testified to at that trial. And so because the record was never developed, as the Michigan Court of Appeals pointed out in their opinion, there was nothing for them to judge trial counsel's ineffectiveness on, and so Mr. Ceasor's conviction was upheld on appeal. That was objectively ineffective assistance of appellate counsel. His deficient performance is apparent from the brief and from the Michigan Court of Appeals ruling. If we look at what appellate counsel did, there's no conceivable reason why he would have raised the Strickland claim in his brief and then asked for the hearing in the wrong way without making the separate request. The state court has decided there wasn't a sufficient Strickland violation for there to have needed to have been an evidentiary hearing. And so why should we be of a different opinion here when the claim, I suppose, would be that there was an adequate strategic basis for counsel's determination? And we can't really say that ordering a hearing would have resulted or could result in a different outcome. Well, Your Honor, first, to address the Michigan Court of Appeals' opinion in Mr. Ceasor's 2007 appeal, they ultimately had a deficient record in front of them because of appellate counsel's ineffective assistance. Had appellate counsel properly moved for the evidentiary hearing, the appellate counsel would have been able to put on the record what it was that trial counsel should have done, finding an expert to testify to rebut the prosecution's. Can you just enlighten me a little more specifically on the Michigan rule that appellate counsel failed to follow? I mean, apparently you have to raise a request for an evidentiary hearing in a very particularized way? Yes, the court rule at the time in 2007 was 7.211c1, and it simply asked that appellate counsel make a separate motion for an evidentiary hearing outside of the body of counsel's brief. Counsel mentioned the Strickland claim in the body of his brief, but did not make the separate request for the motion. And had appellate counsel done so, appellate counsel would have been able to put on the record that there would have been experts available in 2005 to testify on behalf of Mr. Caesar. And those are the affidavits that we provided in Mr. Caesar's motion for post-conviction relief, as well as his habeas petition here. What those affidavits swear to first is that, as of 2005, there was a significant disagreement in the medical community over the validity of shaken baby syndrome diagnoses. They also swear to, after having examined the child's medical records, that his symptoms indicate that he was much more likely to have suffered a concussion after a short fall, rather than from shaking alone, which was the prosecution's theory in 2005. The prosecution also put on witness Dr. Gilmer-Hill, who testified to, she actually flipped a really important study in the field of pediatric neurosurgery. In 1987, a study came out that said, shaking is not likely to cause injuries in the same way that a short fall is likely to cause injuries in small children. And what Dr. Gilmer-Hill did was flip-flop the conclusions. So what the jury heard was... Wait a minute, her evaluation of the medical literature would have been much less important than her actual physical examination of the baby, would it not? You're talking about the examining physician in the emergency room at Children's Hospital who actually examined the baby, who I understand is now recovered. And you weigh that against some expert affidavits that were subsequently submitted on behalf of the defendant by physicians who never examined the child. And they're talking all about what's in the medical literature and all of that. But in terms of determining whether there was adequate strategic decision-making by the attorney or our inability to decide whether it was strategic or not, the examination of the examining physician would be much more persuasive than these after-the-fact affidavits by these defendant-acquired experts, don't you think? Well, what would have been most effective is having a defense expert circa 2005. Dr. Gilmer-Hill did examine Brendan at Children's Hospital in Detroit. And she also not only misstated the medical literature, but she also failed to note that there were no neck injuries or spine injuries. Well, we know she misstated the medical literature. And why would we get into that here? We're not looking for a medical journal article. She was a specialist, an experienced physician at Children's Hospital who evaluated the child and the injuries. And what we are looking for, Your Honor, is an evidentiary hearing so that Mr. Caesar is finally able to develop the record further on the science. This court noted in Ritchie v. Bradshaw that a diligent attorney would have found witnesses to attack the state's conclusion. I can't remember whether the affidavits that you submitted, whether the experts had examined the medical records. They had, Your Honor, yes. They had examined several of Brendan's records. If I recall, there was an affidavit, maybe from Mr. Caesar, that his attorney had told him how critical it was, I think, that there be an expert retained to rebut the opinions expressed by Dr. Gilmer Hill and something to the effect it was absolutely essential, but it's too bad you don't have the money. And this appears to be that maybe that's the reason that an expert was not obtained. Yes, Your Honor. In fact, at the pretrial hearing, Mr. Caesar's counsel stated on the record that this was going to be expert versus expert. And to that end, when Mr. Caesar's trial counsel did not obtain an expert, we do have several affidavits that swear to the observations that the reason why trial counsel did not do that was because he could not afford to pay out the retainer fee for Mr. Caesar's expert. And if we look at Hinton v. Alabama. Meaning Mr. Caesar or the attorney himself. Mr. Caesar or the attorney. And so under Hinton v. Alabama, the Supreme Court found that failing to understand the law about obtaining money from the trial court to obtain an expert is unconstitutionally a deficient performance. Mr. Mayor, may I be part of the record, but are there funds available? Are there not for obtaining or retaining an expert in a situation like this? Yes, in Michigan, under our criminal code, I believe it's 775.15, there is a provision that indigent clients are able to petition to receive funds for an expert. And trial counsel never did that, trial counsel never looked into that. I assume that the fact that the defendant may initially have been able to retain counsel but had depleted his and his family's available resources would not preclude the expert being appointed if he was not appointed, declared indigent on the front end. No, it would not have precluded his obtaining an expert later on. He would have made a showing of being indigent. And as long as there was a nexus of facts, I believe the case in Michigan is People v. Tanner, and the nexus of facts showing that a relevant expert would be necessary to his defense, the court would have, we can assume, would have behaved reasonably and granted him the expert. Now, you're a state appellate counsel in Connecticut. There was one round of state court appeals, I understand. Yes. Correct? Yes, in 2007, Mr. Caesar appealed to the Michigan Court of Appeals, and he filed for a leave to appeal in the Michigan Supreme Court, which was denied at that time. Now, was his state appellate counsel different from his trial counsel? Yes, it was. And did that state appellate counsel request claim ineffective assistance of counsel or request remand for a evidentiary hearing? Only in the body of his brief, which was not following the law in Michigan in 2007. So there was a failure there to properly ask for an evidentiary hearing as well. Yes, Your Honor. Yes, that was on the appeal. Yes, in 2007. All right. Yes. You've got to prevail on the appellate counsel claim in order to get your evidentiary hearing. Yes. And the appellate counsel's failures are based or originate from, however you want to characterize it, from the failures of trial counsel. Yes, that's correct. Appellate counsel recognized that there was a valid Strickland claim, but then was objectively deficient when he failed to follow the law and request a remand for the evidentiary hearing. Okay, thank you. You'll have your full rebuttal. Thank you. Good morning. May it please the court, Bruce Edwards, Michigan Assistant Attorney General on behalf of the warden. This court granted a certificate of appealability on whether or not appellate counsel was ineffective, yet petitioner is now only asking for an evidentiary hearing. I'm not splitting hairs when I point out that asking for an evidentiary hearing is outside the scope of the certificate of appealability. They apparently have abandoned the request that this court find ineffective assistance of appellate counsel. They only want a remand hearing. And that's outside the scope as far as my understanding. So this court could find that the- I mean, the relief is within the discretion of the court. I mean, we don't grant certificate of appealability based on, you know, giving us a narrow set of options. I mean, the set of options is whatever relief is appropriate. And, you know, getting an evidentiary hearing can be as important a form of relief as affirming or reversing. I agree. It can be. I mean, you can remand, and you can remand with what conditions you want to remand with. And why in the world would we start specifying relief in a certificate of appealability? Well, I think it's more than relief. Somebody comes in and says, I can show a constitutional violation. The failure to grant an evidentiary hearing is not a constitutional violation post-conviction. And that's why you wouldn't, that's why you wouldn't mention it, I think, in the certificate of appealability. But that's all they're asking for, something that's, I'll move on, Your Honor. They're asking for relief short of, I don't know why you're complaining. I mean, they're not asking that the court outright declare that he received ineffective assistance of counsel. I mean, they're recognizing that that is an issue subject to an evidentiary hearing. And I don't think the warden ought to spend its time, frankly, maybe they're interested, but I, for one, am not too interested in having you complain about relief that might be worse than the worst outcome for you. As I said, I'll move on, Your Honor. In order to prevail and show ineffective assistance of appellate counsel, you have to show deficient performance and you have to show prejudice. And it's the state's position, consistent with the district court analysis, that they have shown neither. Now, for deficient performance, you're supposed to look at the decision the appellate attorney made the day he filed his brief on appeal, not anything that happened afterwards. If they're only asking for an evidentiary hearing, what's the showing they have to make to get that? I'm not sure that they can ask for it, quite frankly, because they have to show a constitutional violation in order to get relief from a federal court for reviewing a state conviction. That's why I brought it up. Well, they have to show that we can still have a hearing at the federal courts, and that Cullen v. Penholster doesn't bar that, and they've made a good argument about that. And, you know, once you can have an evidentiary hearing in the district court, I don't know that you have to find that the constitutional violation occurred. It seems to me that's putting the cart before the horse. Well, you know, they have said they bring ineffective assistance of appellate counsel. Case law says you have to show deficient performance and prejudice. If they can't show either one of those, why should they be entitled to any relief? Well, because the district court would be the entity, the proper place for that determination to be made after remand for an evidentiary hearing. Should we do that? But the request for an evidentiary hearing was in front of the district court, and the district court denied the request. Well, it might've been wrong. I agree, that's possible, but how so? What argument have they presented showing that the district judge was wrong in not granting an evidentiary hearing? Mr. Edwards, I don't mean to argue with you, but I think they have, I think this is a serious case raising serious constitutional issues, and it probably would help us more if you would engage us in that rather than sort of latching onto kind of cute arguments. Now, the standard can't be that they have to establish what they're going to attempt to establish at the hearing. So the question to you was, what is the standard we are to apply in determining whether there's a sufficient basis to believe that they could be able to establish a constitutional violation? Well, I can tell you, I've argued a lot of cases of the Sixth Circuit. I've filed a lot of Sixth Circuit briefs. I've never had a habeas case where the habeas petitioner came in and said, I'm not entitled to habeas relief. I'm only entitled to an evidentiary hearing that the district court denied. So I'm sort of on, and I can't think, I read every single Sixth Circuit habeas opinion that comes out. I can't remember a single one of those that address this sort of a situation. So we're sort of on, I think, uncharted territory. I mean, maybe it's more convincing to my colleagues than it is to you. If I were you, I would move on. Well, that's what I tried to move on. Is your argument that the state procedural rule that permits an evidentiary hearing is not of constitutional magnitude under these factual circumstances? Is that what you're trying to get to? The Sixth Circuit has held several times that a party is not constitutionally entitled to an evidentiary hearing after he is convicted. That's standard case law by this court, and based on Supreme Court case law. Well, I mean, you know, there are evidentiary hearings ordered all the time involving possible constitutional violations when there's been a substantial showing of the possibility of a constitutional violation. So maybe you should make that your premise for your argument. When appellate counsel was assigned this case, he reviews the transcript, and he has to make a decision. Am I gonna argue that trial counsel was ineffective? This counsel decided, yes, I'm gonna make that argument. Then he has to make a decision. Can I make this argument in good faith based on the existing record, or do I have to argue I need to show something outside this existing record? If he believes he needs to show something outside the existing record, he would file a motion, a separate motion for a hearing with his appellate brief. But many appellate attorneys think, you know, I think on this record, I can in good faith make an argument on this record that trial counsel was ineffective. That was the decision this appellate attorney made. So the question under Strickland is whether or not that decision was something that only an incompetent attorney would make. And it's the state's contention that under the wide scope of professional handling of cases and discretion that's given to appellate attorneys, that that was not an incompetent decision to so proceed. I think one of the problems here is that based on the affidavits that have been presented at this point in time, and based on the centrality of Dr. Gilmer Hill's testimony to the conviction in this case, there now appears substantial reason, and maybe there appeared at the time, substantial reason to believe that Dr. Gilmer Hill's testimony should have been met with an opposing expert. And that's what appellate counsel argued. He said the trial attorney was ineffective because he didn't call an expert at trial. Please grant my client a new trial. That was the argument that was made by appellate counsel that they say was ineffective. And the only reason they say it was ineffective is because they said the trial record wasn't sufficient to make that argument. But that's the kind of discretion that is given to appellate attorneys. They have to decide, do I think I have enough here or do I need more? And I can tell you, I also defend criminal appeals in state court, and we get many requests for get-through hearings, but we get many cases where they say, I think the record currently supports my argument. And many requests for get-through hearings are in fact denied, even when they are made for a variety of reasons. So appellate counsel did what he thought was best. He said, I think the existing record shows that trial counsel was ineffective. And then he said, if this court disagrees, then I ask for a evidentiary hearing. He put that right in his brief. Now, he didn't make it a separate argument or a separate motion, because he was trying to win on the existing record. But he hedged his bets a little bit by saying, but if this court disagrees, and the court could have, if it thought there might be something here, it could have still remanded, even though he didn't file the separate motion. But if he filed a separate motion, he would have been precluded from arguing that the existing record showed that trial counsel was ineffective. Court was faced with a situation where Dr. Gilmer Hill, in her testimony, had poo-pooed any other viable theories. So as far as the appellate court knows, there's no alternative theory to shaken baby syndrome, nor has shaken baby syndrome been discredited in any way. And so that's the record that the appellate court is looking at. So how is it supposed to know, in the absence of an evidentiary hearing, whether there are alternative theories that should have been pursued and could only be pursued through an evidentiary hearing? Right, if you read the cross-examination by trial counsel of Dr. Gilmer Hill, he brought up these other theories. He brought up one of these, an article. His questions are not evidence, and without competing substantive evidence. And when he asked, I think it was Dr. Plunkett, or that was at least one of the people, he asked Dr. Gilmer Hill about, and she poo-pooed his views. You know, in fact, I think that was kind of her response to every effort he made to cross-examine her. But he did bring up these things, and an appellate counsel brought up these articles in his appellate brief as well. In other words, the Toronto Fact and the Michigan Court of Appeals saw these arguments. They heard, they learned there were these alternative views, and nevertheless ruled against them. They learned factually that they were, the questions of the lawyer are not evidence. I agree with that, Your Honor. Had Dr. Gilmer Hill conceded that other alternative theories, other credible theories existed, that would be one thing, but that's not this case, is it? I think you are correct in summarizing that. I would also like to point out that the district court found that the appeal through the motion for relief from judgment and subsequent appeal to the Michigan Court of Appeals and Michigan Supreme Court was an adequate substitute for the lack of filing a separate motion for an evidentiary hearing during the direct appeal. And if that's the case, there's no showing of prejudice and would be no need for an evidentiary hearing. So what you have is, they have these affidavits, but the Michigan Court of Appeals saw the affidavits and the Michigan Supreme Court saw those affidavits on direct appeal, excuse me, on collateral appeal from the denial of the motion for relief from judgment. So the Michigan Appellate Courts saw these affidavits and nevertheless did not grant an evidentiary hearing even though it was requested. So, and then one last point I'd like to bring out is that there was a lot more evidence against the defendant than just Dr. Gilmer Hill's testimony. It was brought out that there are several stories, the mother and then the petitioner changed their story several times to the doctors and to the police. And they could claim, oh, the only discrepancy was whether or not the mother was in the room when it happened. That is not true. And I would refer this court to page ID 295 when Dr. Christopher Hunt is testifying. And he says that he was interviewing Mr. Caesar, says the initial response was the child had fallen off the couch and hit his head on a table and it was unresponsive. And then subsequent to that, I spoke with Mr. Caesar again. And at that point, he said he didn't know how it occurred. And I documented that there was a change in the story at that point. So independent of Dr. Gilmer Hill's testimony, there were plenty of reasons for the jury to find that this child was injured, not from a fall. Mr. Caesar apparently said he had gone to the bathroom. Is that right? That's one of his- Made or surmise as to how it occurred. And then he later explained that he hadn't actually seen it. Is that right? Well, he certainly didn't actually see it, but that's what he said he thought happened. That's correct. But the point is, his first story is, oh, the child fell off the couch and hit the table. Second time around, well, I don't really know how it happened. So either he knows or he doesn't know. And that's reason enough right there, independent of the expert testimony. So I would ask that this court find that appellate counsel was not ineffective. He had the reasonable strategy of, I'm going to try to show on this record that trial counsel was ineffective. And his decision to do that, rather than conceding the current record was insufficient, and then filing the Ginther hearing motion was a reasonable strategy. And I'd ask the court to affirm the district court's denial of relief. Thank you. Thank you, Mr. Evlitz. Thank you. It should be three minutes, Roberta. Thank you. Your Honors, first I want to address what we do need to show in terms of ineffective assistance of appellate counsel to obtain an evidentiary hearing. We need to make a prima facie showing of ineffective assistance of appellate counsel in appellate counsel's deficient performance, which we can observe through the briefs when appellate counsel made a mention of having an evidentiary hearing, but did not make the separate motion to do so. It would have been futile for appellate counsel to mention that hearing in his brief, but not actually follow through with the law in Michigan and ask for a separate hearing to develop the record. We also need to make a prima facie showing of the prejudice that Mr. Cesar suffered as a result of appellate counsel's ineffectiveness, and that we establish through the eight sworn affidavits, four of which come from the sworn medical experts. The next thing I'd like to address is that the record here was never developed on trial counsel's ineffectiveness. When appellate counsel mentioned in his brief that Mr. Cesar suffered prejudice as a result of trial counsel, Mr. Cesar's appellate counsel never opened the record back up through an evidentiary hearing, and that's what we're asking for today. So there's absolutely nothing for the Michigan Court of Appeals to refer back to to see whether Mr. Cesar could have found an expert in 2005 and what that expert would have said. And the Michigan Court of Appeals opinion mentioned that several times. They have no evidence of ineffective assistance of trial counsel on the record, and they have to rule what's on the record alone. And appellate counsel failed to open the record, and that's essentially why we are here today. The third point I want to make is that this case was very close even without a defense expert. And had Mr. Cesar's trial counsel obtained a defense expert, the outcome is reasonably likely to have gone an entirely different way. The jury deliberated for three days and twice requested to hear Dr. Gilmer-Hill's testimony. So Dr. Gilmer-Hill's testimony ultimately went unrebutted three times in the ears of the jury. They- Did the court read it each time? They did. They delivered either the transcript or the recording. I'm not actually sure which they delivered, but they did hear or read the transcript at least twice in addition to what they heard in court. They even initially delivered a notification of a deadlocked jury at the end of the third day and were sent back with a deadlocked jury instruction. So this was a very, very close case. And what we need to do ultimately is open up the record to build the record on the ineffective assistance of counsel here through an evidentiary hearing. And finally, I'll note that while the attorney general noted on collateral appeal, the affidavits went in front of the Michigan Court of Appeals and the Michigan Supreme Court, the attorney general also conceded that that was erroneously procedurally defaulted. And so those courts never ruled on those affidavits on the merits. They did not consider them and instead considered Mr. Cesar's case proceed. Explain that to me a little bit more. Yes, so essentially what happened is that when Mr. Cesar's post-conviction relief motion came in front of the court, they saw the ineffective assistance of counsel and assumed that that claim had already been raised on appeal. But what Mr. Cesar was raising was an ineffective assistance of appellate counsel claim. And there's absolutely no way he could have procedurally defaulted that on appeal. You simply cannot raise an ineffective assistance of appellate claim on appeal. And so the state court, the appellate court, and the state Supreme Court considered it procedurally defaulted. And the attorney general found that that- So they never had occasion to really consider the import of the affidavits? No, Your Honor, no. So they did not consider the- They never got to that step of the analysis? No, they did not get to that step of the analysis. I see my time has run. So I'll simply conclude by asking this court to remand Mr. Cesar's case to the district court for an evidentiary hearing. Thank you. Thank you, Ms. Collier. Well, thank you, counsel, both of you, Mr. Edwards and Ms. Collier. And I speak for myself only, I won't report to speak for my colleagues, but you certainly handled yourself quite well. You're well-prepared. And I, in part, very much appreciate your effort in that of the law school in making a very good presentation today. Thank you. Case will be submitted, and you may call the next case.